J. A17043/19

**NON-PRECEDENTIAL DECISION – SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
| | : | PENNSYLVANIA |
| v. | : | |
| | : | |
| SANDRA HERNANDEZ, | : | No. 763 EDA 2018 |
| | : | |
| Appellant | : | |

Appeal from the Judgment of Sentence Entered February 12, 2018,
in the Court of Common Pleas of Philadelphia County
Criminal Division at No. CP-51-CR-0009866-2016

BEFORE: PANELLA, P.J., OLSON, J., AND FORD ELLIOTT, P.J.E.

MEMORANDUM BY FORD ELLIOTT, P.J.E.:          **FILED DECEMBER 16, 2019**

Sandra Hernandez appeals from the February 12, 2018 aggregate judgment of sentence of 4 to 8 years' imprisonment, followed by 2 years' probation, imposed after a jury found her guilty of aggravated assault, simple assault, recklessly endangering another person ("REAP"), and criminal conspiracy.[1] After careful review, we affirm.

The trial court summarized the relevant facts of this case as follows:

> The underlying charges stem from the arrest of [appellant] on August 23, 2016, for her active participation in the brutal attack of complainant, Stephanie Hernandez [(hereinafter, "victim")]. First and foremost, it is worth mentioning that [a]ppellant [] shares no blood relationship with [victim], even though they have the same last name. . . . On the night of August 22, 2016, [a]ppellant, her boyfriend and co-defendant, Tommy Camacho, and roughly

---

[1] 18 Pa.C.S.A. §§ 2702(a), 2701(a), 2705, and 903(a), respectively.

ten adult persons appeared **en masse** at the home where they knew victim [] and her boyfriend, Nicholas Torres Jr., had been staying to provoke an altercation. The violence that erupted was the culmination of a tortured history of animosity between the parties because of complicated familial relationships.

Appellant and co-victim Nicholas Torres Jr. shared custody of two minor children produced during their tumultuous prior romantic relationship. Appellant had falsely named Nicholas Torres Jr. as the biological father of her third biological child after birth when really the third child had been fathered by Tommy Camacho, the co-defendant in the present case. The bouts of infidelity and lying about paternity led to hostile verbal telephone conversations and confrontations during custody exchanges. On August 22, 2016, the dispute escalated viciously.

That night, [a]ppellant, her boyfriend and co-defendant Tommy Camacho, and about ten of their friends and family members showed up at the home of Nicholas Torres' parents' property in three vehicles. Tommy Cam[a]cho's [] white Chevy van contained [a]ppellant, her sister, Tommy Cam[a]cho and the three minor children who had remained vulnerable witnesses in that van during the entire events. They parked, exited, and approached the Torres' house, where [victim] was outside. Tommy Camacho reportedly carried a firearm with him. Appellant targeted victim [] and called out to her with certain fighting words. [Appellant] then repeatedly punched [victim] as a few of [appellant's] friends joined in the attack.

As Nicholas Torres and his father, Jose Torres, stepped in to try to separate the fighting women, other men circled Jose Torres to prevent his aid and physically attacked Nicholas Torres. Two more carloads containing allies of [appellant] and Tommy [Camacho] arrived and joined in the attack of [victim and Nicholas Torres]. One of the men who had exited a vehicle was observed holding a firearm. Additional

observations had been made of Tommy Camacho running back to his vehicle and retrieving a firearm. [A p]erson observed both Tommy Camacho and the unidentified other man beg[i]n shooting wildly in the direction of both [victim] and Nicholas Torres. The victims escaped being shot by diving under a vehicle and running into the residence. A vehicle that happened to be driving into the block was shot. Fortunately[,] that innocent female miraculously escaped injury. Nicholas Torres' parents also fearfully ran from the shooting inside their home and immediately called 911. Fortunately, no one was shot, but [victim] sustained multiple physical injuries from the pack-like attack of [a]ppellant and her allies.

. . . .

[V]ictim [] was transported and treated at Einstein Hospital for the injuries she suffered from the assault[,] which included a concussion, broken lip, scratched and obstructed vis[i]on to her eye, and multiple bruises and scratches all over her body. [Victim] was prescribed painkillers, and at trial she testified that she still had blocked vision in her right eye, from the severe blows she had received from multiple people[,] particularly [a]ppellant.

Trial court opinion, 12/20/18 at 1-4 (citations to notes of testimony omitted).

Appellant proceeded to a jury trial in connection with this incident and was found guilty of aggravated assault, simple assault, REAP, and criminal conspiracy on August 11, 2017. On November 17, 2017, the trial court sentenced appellant to an aggregate term of 5 to 10 years' imprisonment, followed by 2 years' probation. Appellant filed a timely post-sentence motion on November 27, 2017.

On December 14, 2017, appellant's instant counsel, Laurence Anthony Narcisi, III, Esq. ("Attorney Narcisi"), was appointed to represent her in

post-sentence and direct appeal matters. On January 26, 2018, appellant filed a post-sentence motion alleging the ineffectiveness of trial counsel,[2] and sought reconsideration of her sentence based on an alleged miscalculation of her offense gravity score ("OGS"). On February 12, 2018, the trial court held an evidentiary hearing on appellant's ineffectiveness claims and her request for reconsideration of sentence. Following said hearing, the trial court granted appellant's post-sentence motion in part and denied it in part. Thereafter, the trial court resentenced appellant to an aggregate term of 4 to 8 years' imprisonment, followed by 2 years' probation. This timely appeal followed.[3]

Appellant raises the following issues for our review:

> [1.] After what can only be described as a bungled plea negotiation, trial defense, and an admission of ineffectiveness by trial counsel, did the trial court err in denying [a]ppellant relief

---

[2] Appellant was represented at trial by Janine Vinci, Esq.

[3] We note that on March 9, 2018, the trial court ordered appellant to file a concise statement of errors complained of on appeal, in accordance with Rule 1925(b), within 21 days. Appellant did not file her Rule 1925(b) statement until April 10, 2018, well past the expiration of the 21-day filing period. Generally, the failure to comply with the minimal requirements of Rule 1925(b) will result in the waiver of all issues raised on appeal. **Commonwealth v. Eldred**, 207 A.3d 404, 407 (Pa.Super. 2019). Nonetheless, we decline to find waiver in this instance, as the trial court's Rule 1925(b) order did not properly inform appellant "that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived." Pa.R.A.P. 1925(b)(3)(iv); **see also Commonwealth v. Jones**, 193 A.3d 957, 962 (Pa.Super. 2018) (declining to quash an appeal for noncompliance with Rule 1925(b) where the trial court's Rule 1925(b) order did not specifically track the language set forth in Subsection (b)(3)(iii) and (iv)).

> under the [PCRA[4]] by finding trial counsel was effective?
>
> [2.] Was using the offense gravity source [("OGS")] of eleven when the jury did not find [sic] specifically find serious bodily injury an abuse of the [trial] court's discretion resulting in the imposition of a sentence of four to eight years['] incarceration followed by two years['] probation on a young single mother with three young children[?]

Appellant's brief at 7.[5]

We begin by addressing appellant's argument that the sentencing court abused its discretion in applying an incorrect OGS for her aggravated assault conviction "where there had been no specific finding of serious bodily injury by the jury." (*Id.* at 18.) Appellant avers "[t]he correct [OGS] should be six." (*Id.* at 14, 18.) The record belies appellant's contention.

"A claim that the sentencing court used an incorrect OGS is a challenge to the discretionary aspects of one's sentence." *Commonwealth v. Williams*, 151 A.3d 621, 625 (Pa.Super. 2016) (citation omitted). Where an appellant challenges the discretionary aspects of his sentence, the right to appellate review is not absolute. *Commonwealth v. Allen*, 24 A.3d 1058, 1064 (Pa.Super. 2011). Rather, an appellant challenging the discretionary

---

[4] Post Conviction Relief Act, 42 Pa.C.S.A. §§ 9541-9546.

[5] For the ease of our discussion, we have elected to address appellant's claim in a different order than presented in her appellate brief.

aspects of his sentence must invoke this court's jurisdiction by satisfying the following four-part test:

> (1) whether the appeal is timely; (2) whether appellant preserved his issue; (3) whether appellant's brief includes a concise statement of the reasons relied upon for allowance of appeal with respect to the discretionary aspects of sentence; and (4) whether the concise statement raises a substantial question that the sentence is appropriate under the sentencing code.

*Commonwealth v. Carrillo-Diaz*, 64 A.3d 722, 725 (Pa.Super. 2013) (citations omitted).

Here, appellant filed a timely notice of appeal and preserved her claim in her supplemental post-sentence motion for reconsideration of sentence. (*See* "Supplemental Post Sentence Motions," 1/26/18 at ¶ 30.) Appellant has failed to include a statement in her brief that comports with the requirements of Pa.R.A.P. 2119(f), but the Commonwealth has not objected to this omission. "[W]hen the appellant has not included a Rule 2119(f) statement and the [Commonwealth] has not objected, this [c]ourt may ignore the omission and determine if there is a substantial question that the sentence imposed was not appropriate." *Commonwealth v. Kiesel*, 854 A.2d 530, 533 (Pa.Super. 2004) (citation omitted). This court has recognized that a claim that a sentencing court applied an incorrect OGS raises a substantial question. *Commonwealth v. Lamonda*, 52 A.3d 365, 371 (Pa.Super. 2012), *appeal denied*, 75 A.3d 1281 (Pa. 2013). Accordingly, we proceed to consider the merits of appellant's claim.

Upon review, we find that appellant's contention that the sentencing court improperly applied an incorrect OGS is erroneous. The jury found appellant guilty of, *inter alia*, aggravated assault in violation of Section 2702(a)(1), which contrary to appellant's contention required a finding that she "attempt[ed] to cause serious bodily injury to [victim], or cause[d] such injury intentionally, knowingly or recklessly under circumstances manifesting extreme indifference to the value of human life[.]" 18 Pa.C.S.A § 2702(a)(1). The crime of aggravated assault – attempt to cause serious bodily injury under Section 2702(a)(1) has an OGS of 10. *See* 204 Pa.Code § 303.15. Appellant echoes this assessment in her supplemental post-sentence motion for reconsideration of sentence. (*See* "Supplemental Post Sentence Motions," 1/26/18 at ¶ 20.) At the February 12, 2018 hearing, the sentencing court reiterated that "it was undisputed that the guidelines were ten/zero, which provided a range of twenty-two to thirty-six months, plus or minus twelve months." (Notes of testimony, 2/12/18 at 154). The record indicates that the sentencing court correctly applied an OGS of 10, and thereafter imposed a sentence within standard-range recommended by the Sentencing Guidelines. Accordingly, appellant's claim that the sentencing court abused its discretion in utilizing an incorrect OGS warrants no relief.

Appellant's remaining claims concern trial counsel's purported ineffectiveness in failing to convey the Commonwealth's alleged plea offer to

her and in failing to introduce photographs of her minor injuries to support her claim of "mutual combat." (Appellant's brief at 17-18.)

Generally, "claims of ineffective assistance of counsel are to be deferred to PCRA review; trial courts should not entertain claims of ineffectiveness upon post-verdict motions; and such claims should not be reviewed upon direct appeal." **Commonwealth v. Holmes**, 79 A.3d 562, 576 (Pa. 2013) (footnote omitted). In **Commonwealth v. Delgros**, 183 A.3d 352 (Pa. 2018), our supreme court recognized that a defendant may raise ineffectiveness claims on direct appeal in very limited circumstances:

> The first exception, . . . affords trial courts discretion to entertain ineffectiveness claims in extraordinary circumstances where a discrete claim of trial counsel ineffectiveness is apparent from the record and meritorious to the extent that immediate consideration best serves the interests of justice. The second exception . . . gives trial courts discretion to address ineffectiveness claims on post-sentence motions and direct appeal if there is good cause shown and the defendant knowingly and expressly waives his entitlement to seek subsequent PCRA review of his conviction and sentence.

**Id.** at 360, citing **Holmes**, 79 A.3d at 563-564. The third exception requires "trial courts to address claims challenging trial counsel's performance where the defendant is statutorily precluded from obtaining subsequent PCRA review." **Delgros**, 183 A.3d at 361.

In the instant matter, the trial court held an evidentiary hearing on February 12, 2018, wherein it permitted appellant to pursue the ineffectiveness claims raised in her supplemental post-sentence motion

following the waiver of the right to seek subsequent collateral review. (Notes of testimony, 2/12/18 at 17-18.) In light of the foregoing, we find that the second exception set forth in **Delgros** has been satisfied and direct appellate review of appellant's ineffectiveness claim is appropriate at this juncture.

To prevail on a claim of ineffective assistance of counsel, appellant must establish the following three factors: "first the underlying claim has arguable merit; second, that counsel had no reasonable basis for his action or inaction; and third, that [a]ppellant was prejudiced." **Commonwealth v. Charleston**, 94 A.3d 1012, 1020 (Pa.Super. 2014) (citation omitted), **appeal denied**, 104 A.3d 523 (Pa. 2014). "A petitioner establishes prejudice when he demonstrates that there is a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different." **Commonwealth v. Johnson**, 966 A.2d 523, 533 (Pa. 2009) (citations and internal quotation marks omitted). "Absent a showing of such prejudice, the claim of ineffectiveness fails, regardless of whether counsel lacked a 'reasonable basis.'" **Commonwealth v. Spotz**, 84 A.3d 294, 319 (Pa. 2014).

Upon review, we agree with the trial court that appellant has failed to prove that she was prejudiced by trial counsel's failure to convey the Commonwealth's alleged plea offer to her. Our review of the record establishes that no plea offer was, in fact, ever tendered to appellant. At the February 12, 2018 hearing, the prosecutor testified that trial counsel initially sought a plea agreement to summary offenses and that the Commonwealth

refused to make such an offer. (Notes of testimony, 2/12/18 at 113-114.)

The trial court, in turn, found the prosecutor's testimony credible, reasoning

as follows:

> the testimony credibly presented by former Assistant District Attorney Michael Luongo was that no offer had been formally tendered to [a]ppellant during general off-handed pre-trial discussions with . . . trial counsel, [and appellant] would only have agreed to accept a negotiated guilty plea to the summary graded offense of Disorderly Conduct. This defense position was consistent with defense presented at trial and particularly reflected in the verbal responses given by [a]ppellant during the painstakingly thorough colloquy of [appellant] in the presence of her attorney conducted by this [trial c]ourt just prior to trial. Moreover, as this [trial c]ourt succinctly identified, there is no requirement that an offer be tendered to [appellant]. Additionally, as admitted by all persons present, general conversations between a prosecutor and defense counsel at some point about downgrading charges in some form of fashion, does not mean that any 'deal' that had required communication had come to fruition. Therefore, [trial] counsel had no duty to inform her client of any debate she had with the prosecutor because there [sic] no offer had been tendered.

Trial court opinion, 12/20/18 at 9 (citations and internal quotation marks

omitted). The record fully supports these conclusions.

Moreover, we agree with the trial court that appellant has failed to prove

that she was prejudiced by trial counsel's decision not to introduce

photographs of her minor injuries at trial. The photographs in question neither

lend any credulity to appellant's claim that victim was a mutual combatant in

this altercation, nor alleviate "the overwhelming evidence [that a]ppellant . . .

secur[ed] her boyfriend[] and carloads of friends and relatives to d[rive] to [victim's] location to violently attack [her] . . . ." (Trial court opinion, 12/20/18 at 10.) Accordingly, appellant's ineffectiveness claims warrant no relief.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/16/19