J-A05043-25

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT O.P. 65.37**

| | | |
|---|---|---|
| IN THE INTEREST OF: D.K., A MINOR | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| APPEAL OF: D.K. | : | |
| | : | |
| | : | |
| | : | |
| | : | |
| | : | No. 956 WDA 2024 |

Appeal from the Dispositional Order Entered July 2, 2024
In the Court of Common Pleas of Allegheny County
Juvenile Division at No(s):  CP-02-JV-0000077-2024

BEFORE:  MURRAY, J., KING, J., and FORD ELLIOTT, P.J.E.*

MEMORANDUM BY FORD ELLIOTT, P.J.E.:     **FILED: April 4, 2025**

D.K., a juvenile, appeals from the dispositional order adjudicating him delinquent for possessing a firearm as a minor. *See* 18 Pa.C.S. § 6110.1(a). On appeal, D.K. argues that: (1) the court erred in denying his motion to suppress the at-issue firearm because the police officer who discovered the firearm on D.K.'s person did not have reasonable suspicion to subject him to an investigative detention or frisk him for firearms; and (2) the evidence was insufficient to prove, beyond a reasonable doubt, that D.K. was in possession of a statutorily-defined firearm due to a lack of evidence as to the firearm's barrel length. We affirm.

As cogently summarized by the juvenile court:

_____

* Retired Senior Judge assigned to the Superior Court.

Officer [Parker] Scherf testified that he was on patrol in the City of McKeesport on January 21, 2024, on the 11:00 [p.m.] to 7:00 [a.m.] shift when he observed whom he believed to be three juveniles walking in the middle of the roadway of Coursin Street. At the time of the officer's observations, it was past curfew for juveniles in [. . .] McKeesport. The officer approached the three individuals and observed them close up and in person. As he did this[,] he observed the individual later determined to be [D.K.] put his hand onto the bulge in his jacket. Through the officer's training and experience, he believed this to be a [″]weapons retention check[″] by [D.K.] The officer described what a weapons retention check is for the [juvenile] [c]ourt[, which amounts to ensuring a possessed weapon remains under control, explained in further detail, *infra*]. The officer explained that he not only had training in this area, but he also had pra[c]tical field experience in this area as well. The officer then developed reasonable suspicion to continue with his investigation to determine whether [D.K.] was a juvenile and whether [D.K.] was in possession of a firearm. As the officer started to question [D.K.], [D.K.] blurted out that he was, in fact, a juvenile. The officer later determined that [D.K.] was 16 years old. The officer then seized the AR style rifle from [D.K.]'s person, as it had been concealed under his clothing. Subsequently, the rifle was determined to be operable per the Allegheny County [c]rime [l]ab report which was stipulated by defense counsel. [D.K.] was then detained and arrested.

Juvenile Court Opinion, 8/8/24, at 2.

After his arrest, D.K. filed a motion to suppress "contending that [he] had been unlawfully stopped and searched by the police." Appellant's Brief, at 10; *see also* Omnibus Pre-Adjudicatory Motion, at 2-4 (unpaginated). Following a one-day hearing on July 2, 2024, the juvenile court denied D.K.'s suppression motion and further adjudicated him delinquent.[1] D.K. timely filed

_____

[1] As part of the adjudicatory/dispositional hearing order that found him delinquent, D.K. was, *inter alia*, "placed on probation until further order" and required to "perform 100 hours of community service[.]" Adjudicatory/Dispositional Hearing Order, 7/2/24, at 3-4.

a notice of appeal from the juvenile court's order but was not instructed by the court file a concise statement of errors complained of on appeal. ***See*** Pa.R.A.P. 1925(b). Nevertheless, the juvenile court filed an opinion pursuant to Pennsylvania Rule of Appellate Procedure 1925(a).

On appeal, D.K. presents two issues for our review:

1. Did the juvenile court err in denying his motion to suppress where the police officer conducted an investigative detention of D.K., but the officer lacked reasonable suspicion, based on specific and articulable facts, to believe that D.K. was engaged in criminal activity?

2. Was D.K.'s adjudication of delinquency for possession of a firearm by a minor supported by the record where the Commonwealth failed to prove, beyond a reasonable doubt, that D.K. was in possession of a "firearm" since it presented no evidence establishing the barrel length of the object in question?

***See*** Appellant's Brief, at 9.

Our standard of review for denials of suppression motions is well-settled:

An appellate court's standard of reviewing the denial of a suppression motion is limited to determining whether the suppression court's factual findings are supported by the record and whether the legal conclusions drawn from those facts are correct. Thus, our review of questions of law is *de novo*. Our scope of review is to consider only the evidence of the Commonwealth and so much of the evidence for the defense as remains uncontradicted when read in the context of the suppression record as a whole.

***Commonwealth v. Shaffer***, 209 A.3d 957, 968-69 (Pa. 2019) (citations omitted).

The United States and Pennsylvania Constitutions, under the Fourth

Amendment and Article I, Section 8, respectively, provide coterminous protections against "unreasonable searches and seizures." *Interest of T.W.*, 261 A.3d 409, 418 (Pa. 2021). Applying that collective precept, there are three distinct levels of interaction between police officers and citizens: (1) a mere encounter; (2) an investigative detention; and (3) a custodial detention. *See Commonwealth v. Mackey*, 177 A.3d 221, 227 (Pa. Super. 2017). In expounding upon the distinctions between the three categories of interactions, our Supreme Court has explained as follows:

> The first is a mere encounter, sometimes referred to as a consensual encounter, which does not require the officer to have any suspicion that the citizen is or has been engaged in criminal activity. This interaction also does not compel the citizen to stop or respond to the officer. A mere encounter does not constitute a seizure, as the citizen is free to choose whether to engage with the officer and comply with any requests made or, conversely, to ignore the officer and continue on his or her way. The second type of interaction, an investigative detention, is a temporary detention of a citizen. This interaction constitutes a seizure of a person, and to be constitutionally valid police must have a reasonable suspicion that criminal activity is afoot. The third, a custodial detention, is the functional equivalent of an arrest and must be supported by probable cause. A custodial detention also constitutes a seizure.

*Commonwealth v. Adams*, 205 A.3d 1195, 1199-1200 (Pa. 2019) (citations omitted).

Germane to the present case, we note that a limited frisk or pat down for weapons is constitutional if an officer, who has performed a lawful investigative detention, reasonably believes that the detainee is presently armed and dangerous to the officer or others. *See Commonwealth v.*

- 4 -

***Arrington***, 233 A.3d 910, 915-16 (Pa. Super. 2020). Of course, that frisk must be predicated on an investigative detention that is, itself, supported by a reasonable suspicion of criminal activity. ***See Adams***, 205 A.3d at 1203-04. In summary, following the dictates of ***Terry v. Ohio***, 392 U.S. 1 (1968):

> First, the investigatory stop must be lawful. That requirement is met in an on-the[-]street encounter . . . where the police officer reasonably suspects that the person apprehended is committing or has committed a criminal offense. Second, to proceed from a stop to a frisk, the police officer must reasonably suspect that the person is armed and dangerous.

***Interest of T.W.***, 261 A.3d at 417 (quoting ***Arizona v. Johnson***, 555 U.S. 323, 326-27 (2009)). Reasonable suspicion is defined as "a suspicion that is less than a preponderance of the evidence but more than a hunch." ***Commonwealth v. Jackson***, 907 A.2d 540, 543 (Pa. Super. 2006). Whether reasonable suspicion exists is based on the totality of the circumstances; however, the lens of totality is seen "through the eyes of a trained officer, not an ordinary citizen." ***Id.***

> Nevertheless,

> Although an officer's subjective concern for his safety is, of course, a legitimate interest, it does not enter into a Fourth Amendment analysis unless the investigative detention was initially supported by reasonable suspicion of criminal activity. A contrary conclusion would eviscerate the Fourth Amendment since a concern for officer safety is present in nearly all interactions police have with members of the public. Simply put, in the absence of reasonable suspicion of criminal activity justifying an investigative detention, officer safety is not a permissible basis for police to seize an individual during a mere encounter.

*Adams*, 205 A.3d at 1204 (citations omitted). If an officer performs an investigative detention without reasonable suspicion of criminal activity, the detention is illegal, and the evidence obtained must be suppressed as fruit of the poisonous tree. *See Commonwealth v. Rohrbach*, 267 A.3d 525, 530 (Pa. Super. 2021).

Instantly, the court summarized its findings at follows:

In this case, a police officer on routine patrol observed three individuals whom the officer believed may be juveniles out past curfew. The officer is authorized to investigate this situation as a possible crime. As this officer began his investigation[,] he noticed that one of these individuals, [D.K.,] may possibly be in possession of a firearm based upon that officer's observations and the officer's training and experience. As the officer approached [D.K.], [D.K.] blurted out that he was a juvenile, thus confirming the officer's suspicions regarding whether there was a curfew violation. At this point, based upon the officer's training and experience regarding a person concealing a firearm under their clothing, and believing that public safety may also be an issue, the officer initiated a pat down procedure on [D.K.]. The pat down revealed that [D.K.] was in possession of an AR[-]style rifle under his clothing.

Juvenile Court Opinion, 8/8/24, at 4.

We agree with D.K. that when the officer activated his emergency lights, got out of his patrol vehicle, announced his presence, and ordered D.K. to "stop and to come here[,]" N.T. Suppression Hearing, 7/2/24, at 10, D.K. "was, as a matter of law, subjected to an investigative detention." Appellant's Brief, at 28; *see also* Commonwealth's Brief, at 10 (conceding that D.K. "was seized for purposes of the Fourth Amendment").

However, prior to engaging D.K., the officer "observed three juveniles[,

- 6 -

which included D.K.,] walking in the middle of the roadway of Coursin Street." N.T. Suppression Hearing, 7/2/24, at 6, 8 (officer stating that D.K. was walking against traffic and was "the furthest [of the three] into the lanes of traffic[]"), 26 (later indicating there was sidewalk in vicinity of where entire interaction took place). The officer observed these individuals at approximately 12:30 a.m. *See id*. The officer knew that McKeesport had a curfew for juveniles that, at its latest, meant juveniles could not be out past 11:00 p.m. *See id*. at 7. The officer saw the individuals' "small stature. They were all walking together, just appeared to be small stature, small-framed individuals." *Id*. The officer, based on these observations, determined that D.K. was a juvenile. *See id*. at 8.

After the officer drove past the individuals, D.K. "looked over and saw [the officer] in [his] parked patrol vehicle[.]" *Id*. D.K. then performed "what [the officer knew] through [his] training and experience was a weapons retention check." *Id*. The officer explained that a weapons retention check is when people "put their hand onto [their] firearm to feel to make sure it is still there and not exposed." *Id*. at 9-10 (officer also explaining that the concept of weapons retention checks is taught in police officer training and that he has dealt with the issue while on patrol "multiple times"). The officer then alerted another officer that he had "observed three juveniles walking in the middle of the street and . . . was going to make contact with them to investigate the traffic violation that [he] observed." *Id*. It was at this juncture that the officer

approached the suspected juveniles with his emergency lights and stopped them for questioning. *See id*.

After he was stopped, D.K., who had initially started to walk away from the officer, but then had to be grabbed for the officer "to continue [his] investigation[,]" "immediately brought his arms into his body." *Id*. at 10-11. The officer gave him verbal commands to stop tensing, but D.K. "continued to pin his arms against his body, like his torso area." *Id*. The officer noticed "a large anatomic bulge in his torso area" prior to frisking him. *Id*. Between the weapons retention check and the anatomical bulge, the officer believed that D.K. might be armed. *See id*. at 11-12.

D.K. argues that the officer did not have reasonable suspicion, based on specific and articulable facts, to conduct an investigative detention and thereafter proceed to a frisk. *See* Appellant's Brief, at 40. Instead, he claims that the officer "acted solely on an unparticularized hunch that D.K. may have been a juvenile and that D.K. may have been in possession of a firearm." *Id*. D.K. then challenges the officer's belief that he was a juvenile, which underlies the officer's reasonable suspicion of D.K.'s curfew violation, by pointing to Officer Scherf's testimony wherein he admitted that D.K. was almost six feet tall and covered by a mask at the time of the initial encounter. *See id*. at 39. D.K. also avers that the officer "had no reason to believe that the 'anatomical bulge' on [D.K.] was a firearm, since he could not, in any way whatsoever, describe the object." *Id*.

We disagree. First, the court found Officer Scherf to be credible in his observation that D.K. was a juvenile and in violation of curfew. **See** N.T. Suppression Hearing, 7/22/24, at 47; **see also** Juvenile Court Opinion, 8/8/24, at 4 ("In this case, a police officer on routine patrol observed three individuals whom the officer believed may be out past curfew."). As stated below, because Officer Scherf provided testimony to this effect, which the court accepted, we cannot contradict the court's factual determination that D.K. was observed to be a minor.

Second, D.K.'s arguments do not take into account two other important pieces of information that the officer observed prior to performing an investigative detention: (1) that D.K. was seen walking in the middle of the road, a traffic violation, **see** 75 Pa.C.S. § 3544(a) (making it "unlawful for any pedestrian to walk along and upon an adjacent roadway" where "a sidewalk is provided and its use is practicable[]"); and (2) that D.K. performed, based on the officer's training and experiences, a weapons retention check.

Bound by the juvenile court's credibility determinations, we find that the officer, who had observed both D.K.'s "small stature" and D.K.'s weapons retention check, had reasonable suspicion to believe that D.K. was committing at least one crime, allowing for the initial stop. Therefore, this component of D.K.'s argument fails.

Even accepting D.K.'s position that the officer's observation of his

juvenile status was flawed,[2] Section 3544 of the Motor Vehicle Code prohibits, under all circumstances, pedestrians from walking in *the middle* of the roadway. **See id**. § 3544(a)-(c).[3] As such, the officer's unequivocal observation of D.K. in the middle of the roadway provided him with reasonable suspicion, wholly independent of age, that D.K. was not in compliance with the Vehicle Code, thereby also justifying initiation of the challenged stop.[4] **Cf. Commonwealth v. Harris**, 176 A.3d 1009, 1020 (Pa. Super. 2017) ("During a traffic stop, the officer may ask the detainee a moderate number of questions to determine his identity and to try to obtain information confirming or dispelling the officer's suspicions.") (citation and internal quotation marks omitted).

Although the court did not expressly rely upon D.K.'s observed location in the middle of the road in its denial of suppression, the court found Officer

---

[2] While D.K. provides some indication that Officer Scherf's testimony was infirm because he believed D.K. to be a juvenile despite his height and masked face, D.K.'s contention challenges the juvenile court's credibility determinations, which are solely within the juvenile court's purview. **See Commonwealth v. Luczki**, 212 A.3d 530, 542 (Pa. Super. 2019) ("It is within the suppression court's sole province as factfinder to pass on the credibility of witnesses and the weight to be given their testimony.").

[3] Officer Scherf admitted there was some snow on the sidewalk when he stopped D.K. **See** N.T. Suppression Hearing, 7/22/24, at 23, 25-26. While D.K. argued before the juvenile court that the snow rendered it not "practicable" for him to use the sidewalk that evening, thus providing, in his view, a reasonable excuse for walking in the road, **see id**. at 34, he has not advanced any argument to that effect in his appellate brief.

Scherf to be wholly credible. At the suppression hearing, Officer Scherf testified that, prior to activating his emergency lights, he had alerted his "beat partner" that he had witnessed "three juveniles walking in the middle of the street and that [he] was going to make contact with them to investigate the traffic violation that [he] observed." N.T. Suppression Hearing, 7/22/24, at 10. Whether Officer Scherf possessed reasonable suspicion is a legal determination, reviewed by this Court *de novo*. **See Shaffer**, 209 A.3d at 969. Additionally, we may affirm a suppression order for any reason that is supported by the record. **See Commonwealth v. Jones**, 193 A.3d 957, 965 (Pa. Super. 2018). Accordingly, D.K.'s traffic violation, seen in tandem with his performing of a weapons retention check, establishes an alternative basis for the officer to have reasonable suspicion, allowing for the performance of an investigative detention.

As to the subsequent frisk component of the stop,[5] although it was perhaps insufficient if the officer only observed the amorphous "anatomic bulge" in D.K.'s torso area, the officer previously observed D.K. perform a weapons retention check before engaging with him. As such, the officer, taking these two pieces of information together, formed reasonable suspicion to

---

[5] Prior to the frisk, while the officer was approaching on foot, D.K. "made a spontaneous utterance" indicating that he was a juvenile, further evidencing the fact that D.K. was not permitted to be in possession of a firearm. N.T. Suppression Hearing, 7/2/24, at 12.

believe that D.K. was presently armed and dangerous, giving the officer the ability to conduct a valid pat-down. *See Commonwealth v. Gray*, 896 A.2d 601, 606 (Pa. Super. 2006). ("[P]olice officer must be able to articulate specific facts from which he reasonably inferred that the individual was armed and dangerous.").

Based on the totality of the circumstances, the officer had reasonable suspicion to perform an investigative detention and, too, having performed a lawful investigative detention, had reasonable suspicion to believe that D.K. was armed and dangerous. Therefore, the evidence supported the juvenile court's decision to deny suppression, and D.K. is due no relief on this issue.

D.K.'s second argument on appeal is that the Commonwealth failed to prove that he was in possession of a "firearm." This claim contests the sufficiency of evidence.[6] Specifically, D.K. contends that the Commonwealth

_____

[6] We note our displeasure as to the initial incompleteness of the record in our attempt to resolve this sufficiency claim. For such claims, "we do not review a diminished record. Rather, the law is clear that we are required to consider all evidence that was actually received, without consideration as to the admissibility of that evidence or whether the trial court's evidentiary rulings are correct." *Commonwealth v. Arias*, 286 A.3d 341, 350 (Pa. Super. 2022) (internal citations, quotations, and brackets omitted).

D.K.'s counsel failed to include two vital components in the certified record: (1) the Allegheny County crime lab report; and (2) the body camera video of the arresting officer. We stress that "[i]t is an appellant's duty to [e]nsure that the certified record contains all documents necessary for appellate review." *In re O'Brien*, 898 A.2d 1075, 1082 (Pa. Super. 2006) (footnote omitted); *see also* Pa.R.A.P. 1921, Note (stating, "Ultimate responsibility for a complete record rests with the party raising an issue that requires appellate court access

*(Footnote Continued Next Page)*

- 12 -

did not present any evidence establishing "barrel length." **See** 18 Pa.C.S. § 6102. Officer Scherf, instead, indicated that he found an "AR-style rifle which was recovered from [D.K.'s] waistband area." N.T. Suppression Hearing, 7/2/24, at 12. The firearm was tested and found to be operable. **See id**. at 13. D.K. posits that even though Officer Scherf "described the object as a 'rifle' and the juvenile court found his testimony to be credible, . . . the Commonwealth presented no evidence establishing the barrel length of the object itself." Appellant's Brief, at 47.

When reviewing a claim of insufficient evidence, we employ the following standard of review:

> When a juvenile is charged with an act that would constitute a crime if committed by an adult, the Commonwealth must establish the elements of the crime by proof beyond a reasonable doubt. When considering a challenge to the sufficiency of the evidence following an adjudication of delinquency, we must review the entire record and view the evidence in the light most favorable to the Commonwealth. In determining whether the Commonwealth presented sufficient evidence to meet its burden of proof, the test to be applied is whether, viewing the evidence in the light most favorable to the Commonwealth and drawing all reasonable inferences therefrom, there is sufficient evidence to find every element of the crime charged. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by wholly circumstantial evidence.

_____

to record materials.") (citation omitted). Although we could have found waiver because of these deficiencies, **see Century Indemnity Company v. OneBeacon Insurance Company**, 173 A.3d 784, 809 (Pa. Super. 2017) ("[W]hen a necessary document is not included in the certified record, we may find the issue waived on appeal."), this Court *sua sponte* requested the missing record components, pursuant to Pa.R.A.P. 1926(b)(1), and thereafter received and considered those items.

> The facts and circumstances established by the Commonwealth need not be absolutely incompatible with a defendant's innocence. Questions of doubt are for the hearing judge, unless the evidence is so weak that, as a matter of law, no probability of fact can be drawn from the combined circumstances established by the Commonwealth.

*In Int. of J.G.*, 145 A.3d 1179, 1188 (Pa. Super. 2016) (citation omitted).

The juvenile court is "free to believe some, all, or none of the evidence presented." *Id.* (citation omitted).

Although the court found D.K. delinquent under 18 Pa.C.S. § 6110.1 for possessing a firearm as a minor, the term "firearm" is defined in Section 6102 of the Crimes Code as follows:

> Any pistol or revolver with a barrel length less than 15 inches, any shotgun with a barrel length less than 18 inches or any rifle with a barrel length less than 16 inches, or any pistol, revolver, rifle or shotgun with an overall length of less than 26 inches. The barrel length of a firearm shall be determined by measuring from the muzzle of the barrel to the face of the closed action, bolt or cylinder, whichever is applicable.

18 Pa.C.S. § 6102. The Commonwealth may prove that a firearm meets the requirements of Section 6102, including barrel lengths, with circumstantial evidence. *See Commonwealth v. Rozplochi*, 561 A.2d 25, 31 (Pa. Super. 1989) (testimony establishing that gun was placed into envelope of certain size sufficient to meet barrel length requirement of Section 6102).

Here, Officer Scherf uncovered an AR-style rifle that fit into D.K.'s waistband area, which was both consistent with where the officer saw the bulge on D.K.'s person and where he saw D.K. perform a weapons retention

check. **See** N.T. Suppression Hearing, 7/2/24, at 14. "The rifle was inserted through a pant leg[ with the] grip . . . facing towards the ground." **Id.** at 17. D.K.'s counsel also stipulated "to the contents of the [c]rime [l]ab [report]." **Id.**[7] The court admitted the report into evidence. **See id.** at 18. The rifle was specified as being a "5.56 millimeter caliber AR-15 style rifle." **Id.**

Beyond the officer's testimony and the crime lab report, the body camera video of the arresting officer was also played in open court. **See** N.T. Suppression Hearing, 7/22/24, at 24-27 (D.K.'s counsel marked video "as Defense Exhibit B and [thereafter] publish[ed] it to the screen[]"); **see also Commonwealth v. Jones**, 271 A.3d 452, 456-57 (Pa. Super. 2021) (holding surveillance video played at trial but never formally admitted into evidence constituted evidence that could be considered on appeal in determining sufficiency of evidence). That video clearly shows the firearm in question and provides *some* evidence as to its length:

---

[7] We note that the crime lab report does not indicate any of the firearm's dimensions. **See** Commonwealth Exhibit 1.





Body Camera Video, 1/21/24, 00:34:42 A.M., 00:34:45 A.M.

Although the crime lab report lacked any measurement of the rifle's length, its spatial omission does not negate the existence of videographic

evidence depicting the rifle. Utilizing the precepts espoused in **Rozplochi**, the fact-finder, in this case the juvenile court, could reasonably infer the length of the firearm from the video juxtaposed against the rest of the evidence including the officer's description of the weapon. Thus, in viewing the evidence in the light most favorable to the Commonwealth, we find that the evidence was sufficient to demonstrate that the gun found on D.K. constituted a "firearm" within the meaning of Section 6102, i.e., that the barrel length of the rifle was less than 16 inches or the firearm itself had a total length of less than 26 inches. **See** 18 Pa.C.S. § 6102. Although the precise dimensions of the firearm were not made part of the record, the Commonwealth circumstantially demonstrated that it had met the statutory definition, and we defer to the juvenile court's fact-finding as to the exact dimensions of the rifle. **See Rozplochi**, **supra**; **see also Commonwealth v. LaMotta**, 2024 WL 5256383, *2 (Pa. Super., filed Dec. 31, 2024) (unpublished memorandum cited for persuasive authority) (on sufficiency review, fact-finder can reasonably infer length of rifle from, *inter alia*, presentation of body camera footage depicting rifle at trial). Accordingly, D.K.'s sufficiency claim necessarily fails.

As neither of D.K.'s two issues raised in this appeal have merit, we affirm the order adjudicating him delinquent.

Order affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

DATE: <u>4/4/2025</u>