J-A02004-18

2018 PA Super 208

| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF |
|---|---|---|
| | : | PENNSYLVANIA |
| Appellant | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| BRIAR DAVID JONES | : | No. 755 WDA 2017 |

Appeal from the Order Entered April 25, 2017
In the Court of Common Pleas of Greene County Criminal Division at
No(s): CP-30-CR-0000388-2016

BEFORE: BOWES, J., OLSON, J., and KUNSELMAN, J.

OPINION BY BOWES, J.: **FILED JULY 17, 2018**

The Commonwealth appeals from the trial court's order granting suppression of a firearm and statements. We affirm in part, reverse in part, and remand for further proceedings.

The trial court set forth its factual findings in its order granting suppression, which we adopt herein:

> The Court has heard the testimony of Pennsylvania State Police Trooper Nathan Feniello and the testimony of [Appellee], Briar Jones, and his girlfriend, Christina Wellman, and the Court . . . will make the following determination of facts:
>
> On September 14, 2016, Trooper Feniello, while being relatively newly employed and still being coached and/or mentored by Trooper James Bahirad, came into information which showed sometime prior to this date there were three entries and thefts into vehicles, that were temporally and geographically related. The Court also believes that the State Police had information which showed that [Appellee] was in possession of credit cards stolen during one of those three automotive "break ins" and that in one vehicle theft, a 9mm black pistol was stolen. As such, the Court believes that the State Police contacted [Appellee] and also the Court believes that [Appellee] lacked transportation,

and that the request of [Appellee] to come to the Pennsylvania State Police Barracks would have been a voluntary request in which [Appellee] would have been free to decline.

The Court also believes that the Pennsylvania State Police went to [Appellee]'s home at 1539 Aleppo Road, Aleppo, Pennsylvania, sometime in the evening hours of September 14, 2016. The Court believes that there was a conversation with [Appellee] and the two Troopers mentioned above, on the porch of that home, and at that point [Appellee] was free to leave and not under arrest. Therefore, any statement made with regard to [Appellee] coming into possession of a gun which he purchased from Michael Dean would be a voluntary statement and not suppressed, the Court believing that *Miranda* would not have been required under those circumstances. The Court also believes the testimony of Trooper Feniello when he indicates that [Appellee] recognized that the gun was stolen or likely to be stolen. The Court also determines as factual that [Appellee] was transported, for whatever reason, but however transported in handcuffs from that address in Aleppo to his grandmother's home, and regardless of the intention of the State Police, the Court believes that at least during the period of his transport from his home in Aleppo to his grandmother's that he would've been in custody and any statements made by [Appellee] during that initial car trip would be suppressed. The Court need not consider the statements of the juvenile brother or the grandmother, as it though appears that the residence of the grandmother and presumably Forest, the brother of [Appellee], was searched, and again the Court need not determine whether that was Constitutional or not.

The Court also determines that [Appellee] was again transported from his grandmother's back to his place of residence in Aleppo and was again handcuffed, and any statements made during that second car trip would also be suppressed as no *Miranda* [w]arnings were read. After the second "handcuffed" trip and upon return to [Appellee]'s home, the Court believes that an environment was created that such that from the time that the garage was beginning to be searched, that [Appellee] was no longer free to leave and that *Miranda* [w]arnings were not read. The Court will also acknowledge, though, to the record that [Appellee]'s girlfriend, Christina Wellman, did indicate to the Pennsylvania State Police that the handgun could be located in the rafters of their home. The Court will make a determination

as to whether this was consensual, either by [Appellee] or by Ms. Wellman, that decision to be made after further consideration of the facts and law.

The Court further determines as factual that the handgun, that was ultimately recovered, was recovered by [Appellee] and the circumstances were such that [Appellee] would have been in a position when he was no longer free to leave, in other words that the circumstances were custodial and that ***Miranda*** was never read from the time of [Appellee]'s and Troopers' return to [Appellee]'s home at the Aleppo address. The Court will also acknowledge to the record that the Troopers and [Appellee] "recovered" a pink and black 9mm handgun, which all would acknowledge, and the Court factually determines was not the handgun for which the original investigation began.

Trial Court Order, 4/25/17, at 1-6.

The trial court applied the law to these factual findings, which we will address in detail below, and concluded that the gun must be suppressed because neither Appellee nor Ms. Wellman voluntarily consented to the search of the home.[1]

The Commonwealth appealed and the trial court ordered a Pa.R.A.P. 1925(b) statement.[2] The Commonwealth complied and the court authored its opinion in response, which adopted the prior order and addressed the Commonwealth's additional issues. Before examining the Commonwealth's

---

[1] The facts indicate that Ms. Wellman asked Appellee during these conversations whether the firearm was in the rafters of the home. It is unclear whether Appellee, Ms. Wellman, or both permitted the officers to enter the home to search.

[2] The Commonwealth certified with its notice of appeal that the order substantially handicaps its prosecution. Accordingly, we have jurisdiction to review this interlocutory appeal. Pa.R.A.P. 311(d).

argument, we address Appellee's assertion that this Court must quash the appeal due to the Commonwealth's purported failure to comply with Pa.R.A.P. 1925. The relevant facts follow. The trial court's order directed the Commonwealth to file a Rule 1925(b) statement within twenty-one days, and stated that noncompliance "may be considered as a waiver." Order, 5/23/17, at 1. Additionally, the order required the Commonwealth "to timely file and serve the statement of record with the court[.]" *Id*.

The Commonwealth's subsequent filing certified that a copy was supplied to Appellant's counsel "by hand, mail or facsimile." Concise Statement, 6/6/17, at 2. The order did not, however, indicate whether or not a copy was served on the judge.[3]

The trial court's Pa.R.A.P. 1925(a) opinion makes no reference to whether the Commonwealth provided the judge a copy of the concise statement. Instead, the failure to serve a copy of the Pa.R.A.P. 1925(b) statement was raised by Appellee in his brief, and we could remand for a determination on that point. *See* Pa.R.A.P. 1925(c)(1) ("An appellate court may remand in either a civil or criminal case for a determination as to whether a Statement had been filed and/or served or timely filed and/or served.").

_____

[3] Pursuant to Pa.R.A.P. 1925(b)(1), the statement may be served by manner of service specified under Pa.R.A.P. 121(c), which includes personal service at the judge's chambers.

We have not found any case involving this scenario; instead, the cases involve the trial court raising the issue in the Pa.R.A.P. 1925(a) opinion. ***Berg v. Nationwide Mut. Ins. Co., Inc.***, 6 A.3d 1002, 1004 (Pa. 2010) (plurality) ("[The trial judge] stated that he had not been served with Appellants' 1925(b) Statement, and concluded that, as a result, all of Appellants' issues on appeal were waived"); ***Commonwealth v. $766.00 U.S. Currency***, 948 A.2d 912, 914 (Pa.Cmwlth. 2008) ("The trial court noted that Appellant failed to serve on the trial court judge both his notice of appeal and statement of errors complained of on appeal"); ***Forest Highlands Cmty. Ass'n v. Hammer***, 879 A.2d 223, 228 (Pa.Super. 2005) (quoting trial court opinion, "To date, this [c]ourt has never been served with a copy of a Rule 1925(b) Statement").

We decline to find waiver due to the Commonwealth's potential noncompliance, because the trial court's Rule 1925(b) order itself is deficient. In ***Berg***, ***supra***, the trial court's Rule 1925 order required the appellants to "file with the [c]ourt, and a copy with the trial judge, a Concise Statement[.]" ***Id***. at 1004. The appellants' attorney brought three copies of the 1925(b) statement for filing, but the prothonotary stated that the judge only wanted the original and refused to say where the senior trial judge's chambers were located. The prothonotary promised counsel that the trial judge would receive the statement. As noted *supra*, the trial judge stated

that the statement was never served. In ***In re Estate of Boyle***, 77 A.3d

674, 678 (Pa.Super. 2013), we explained ***Berg*** as follows:

> In ***Berg***, our Supreme Court considered whether an appellant's failure to personally serve on a trial judge a court-ordered 1925(b) statement, in accordance with Pa.R.A.P. 1925, results in waiver of all issues, where the court's order itself does not comply with Rule 1925. . . .
>
> A plurality of our Pennsylvania Supreme Court held that, in contravention of Rule 1925(b)(3), the express language of the 1925(b) order did not instruct the appellants to serve a copy of their 1925(b) Statement on the trial judge; rather, it directed them to file copies . . . with the court and with the trial judge. Accordingly, it concluded, the appellants substantially complied with the court's order by attempting to provide the prothonotary with two time-stamped copies of [their] 1925(b) statement, with one to be served on the trial judge.

***Id***. at 678 (cleaned up).

Since "it is the trial court's order that triggers an appellant's obligation

under the rule," ***id***., we quote the order at issue herein:

> AND NOW, this 23rd day of May, 2017, the Commonwealth having filed an appeal to the Pennsylvania Superior Court on May 22, 2017, it is ORDERED that pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), the Commonwealth shall file a concise statement of the matters complained of on appeal within twenty-one (21) days of this date, the failure to comply may be considered as a waiver of all objections to the order from which the appeal was taken, including the failure to timely file and serve the statement of record with the court, and as otherwise required by Pa.R.A.P. 2116.

Order, 5/23/17 at 1. The text of the Rule states:

> (3) *Contents of order.*--The judge's order directing the filing and service of a Statement shall specify:

> (i) the number of days after the date of entry of the judge's order within which the appellant must file and serve the Statement;
>
> (ii) that the Statement shall be filed of record;
>
> (iii) that the Statement shall be served on the judge pursuant to paragraph (b)(1);
>
> (iv) that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived.

Pa.R.A.P. 1925(b)(3).

The instant order fails to comply with this directive in several ways. First, the order directs the Commonwealth to comply with Pa.R.A.P. 2116. That citation is misplaced. While the language of that Rule states "The statement of the questions involved must state concisely the issues to be resolved," Rule 2116 is placed within chapter twenty-one, which governs the contents of appellate briefs. Second, the order informs the Commonwealth that failure to comply "may be considered" waiver. That language differs to a material degree from the "shall be deemed waived" text of Rule 1925(b)(3)(iv).[4] Third, the order does not specify "that the Statement shall

_____

[4] The trial court's order in **Berg** was defective in this respect, as it did not mention waiver at all. The plurality declined to address whether that failure independently justified its ruling.

> As noted, although the trial court's order failed to meet the requirements of Rule 1925(b)(3)(iii) and (iv), it is the trial court's failure to comply with subsection (b)(3)(iii) that we find directly implicated in the instant case. Therefore, we save for

*(Footnote Continued Next Page)*

be served on the judge pursuant to paragraph (b)(1)." Instead, it only directs the Commonwealth to "file and serve the statement of record with the court[.]" Notably, paragraph (b)(1)(ii) governs filing the statement, while (b)(1)(iii) discusses serving the statement with the judge. Herein, the order used the phrase "the court," which is ambiguous in that it does not distinguish between the Court of Common Pleas as the court of record and "the court" in reference to the trial judge.

Due to the multiple foregoing defects, we decline to quash the appeal. We recognize that the "substantial compliance" standard applied in **Berg** would not be met herein if the Commonwealth had failed to supply a copy by

---
*(Footnote Continued)*

   another day the effect of a trial court's failure to comply with subsection (b)(3)(iv), namely, the failure to specify in its Rule 1925(a) order that any issue not included in an appellant's Rule 1925(b) statement shall be deemed waived.

**Berg v. Nationwide Mut. Ins. Co., Inc.,** 6 A.3d 1002, 1012 n.19 (Pa. 2010).

The order in **Berg**, as quoted in the opinion, did not mention waiver in any respect, whereas here the trial court stated that failure "may" result in waiver. This case thus presents the additional question of who "deems the issue waived": the trial court, or the appellate court. This Court has raised the issue *sua sponte*. **In re Estate of Boyle**, 77 A.3d 674, 679 (Pa.Super. 2013) ("We acknowledge that neither party nor the trial court has raised the timeliness of the 1925(b) statement."). However, in those cases, it is the absence of a docket entry that permits this Court to *sua sponte* address the issue. Here, as noted, the trial judge did not state whether or not the Commonwealth supplied a copy.

any means whatsoever.[5]   However, unlike **Berg** the order herein did not require the Commonwealth to supply a copy.   Therefore, the Commonwealth's obligations were unclear, and it was informed that waiver "may" result.[6]   We therefore decline to find waiver and now turn to the Commonwealth's argument.

_____

[5] Our sister court determined, in **Commonwealth v. Matsinger**, 68 A.3d 390 (Pa.Cmwlth. 2013), that the following order was defective:

> In the instant matter, the trial court's order omitted Pa.R.A.P. 1925(b)(1) to describe the manner of filing and service, as is required by Pa.R.A.P. 1925(b)(3)(iii). Instead, the trial court's order merely required "fil[ing] with the trial court and serv[ice] on the trial judge." Trial Ct. Order, September 28, 2012. Thus, the trial court's failure to comply with Pa.R.A.P. 1925(b)(3)(iii) deprived Matsinger of critical information regarding the proper method for filing and service of his 1925(b) Statement.

**Id**. at 395.   That order distinguished between the court and the judge. **Matsinger** ultimately concluded that the appellant substantially complied.

[6] The use of permissive language suggests that waiver is not an automatic consequence, which, as stated by Justice Baer's dissenting opinion in **Berg**, lends itself to disparate treatment.

> Were I to agree with the OAJC that the trial court's order trumps Rule 1925(b), I would be inclined to join this reasoning. In my view, however, where an order and rule are in tension, the careful practitioner either should comply with both, or if that is not clearly possible, comply with the rule and seek clarification from the issuing judge of the order. Absent such prudence, waiver should result, not because it is harsh on the litigant or counsel, but because it ensures uniform justice to the tens of thousands of litigants proceeding through Pennsylvania courts each year.

*(Footnote Continued Next Page)*

We now address the Commonwealth's appeal, which raises the following question: "Did the court err in declaring the consent to search the Appellee's home involuntary and suppressing the evidence obtained as a result?" Commonwealth's brief at 9. We apply the following principles.

> When reviewing an appeal from a suppression court's decision, we must first determine whether the record supports the court's factual findings. **Commonwealth v. Williams**, 539 Pa. 61, 71, 650 A.2d 420, 425 (1994). When the Commonwealth appeals from a suppression court's decision, we consider only the evidence of [Appellee]'s witnesses and so much of the prosecution's evidence that remains uncontradicted when fairly read in the context of the record as a whole. **Commonwealth v. Prosek**, 700 A.2d 1305, 1307 (Pa.Super.1997). We are bound by the suppression court's factual findings when the evidence supports those findings; however, we may reverse the suppression court when it draws erroneous legal conclusions from those factual findings. **Williams**, 539 Pa. at 71–71, 650 A.2d at 426.

**In re V.H.**, 788 A.2d 976, 978 (Pa.Super. 2001).

The Commonwealth notes that, by Rule, a defendant is required to "state specifically and with particularity the evidence sought to be suppressed, the grounds for suppression, and the facts and events in support thereof." Pa.R.Crim.P. 581(D). The instant suppression motion stated, in pertinent part:

> It is believed that [Appellee], upon being questioned by the trooper, made inculpatory statements. These statements were not preceded by [Appellee] being advised of his rights pursuant

_(Footnote Continued)_ ───────────────

**Berg v. Nationwide Mut. Ins. Co., Inc.**, 6 A.3d 1002, 1018 (2010) (Baer, J., dissenting).

- 10 -

> to *Miranda v. Arizona* and the state and federal progeny of that case; and, without [Appellee] making a knowing, voluntary and intelligent waiver of those rights. The statements were the "fruits" of an unlawful arrest and were obtained in violation of rights secured to [Appellee] by the Fourth, Fifth and Fourteenth Amendments to the United States Constitution, Article I, Section 8 and Section 9 of the Pennsylvania Constitution and Pennsylvania Rules of Criminal Procedure.
>
> WHEREFORE, [Appellee] respectfully requests this Honorable Court to **declare [Appellee]'s arrest to be unlawful and to suppress all evidence obtained as a result of the unlawful arrest, including, but not limited to, any and all evidence obtained**, and statements obtained from [Appellee] by law enforcement officers.

Motion, 3/20/17, at 2 (emphasis added).

We have carefully reviewed the record and conclude that the trial court abused its discretion by suppressing the evidence on grounds not raised by Appellee. There is no doubt that Appellee sought suppression of the gun, but Appellee did not theorize that suppression was warranted on the basis of involuntary consent. Instead, he explicitly linked suppression to the lack of *Miranda* warnings.

The trial court accepted Appellee's *Miranda* argument, and determined that Appellee was subject to custodial interrogation once he was transported to his grandmother's home. The court thus suppressed all statements made after that point. With respect to the gun, however, the trial court pivoted to an analysis of whether the search was consensual, and concluded that neither Appellee nor Ms. Wellman consented.

- 11 -

In consideration of all the relevant factors the Court finds that the consent given was NOT voluntary and as such the evidence of the pink and black 9mm pistol is hereby SUPPRESSED.

The Court also believes that the totality of the circumstances as they presented themselves were such that the Court believes any "consent" by Ms. Wellman was likewise involuntary.

Trial Court Order, 4/25/17, at 7.

The trial court thus determined that the firearm was recovered as a result of a consensual search, but that the consent was involuntarily given.[7] This was an abuse of discretion, since Appellant did not raise that ground. A defendant cannot raise, on appeal, a claim that he was entitled to suppression on a theory he did not raise. *See Commonwealth v. Baumhammers*, 960 A.2d 59, 76 (Pa. 2008) ("This Court has consistently

---

[7] The trial court addressed both the consent of Appellee, and consent by his girlfriend. "[A] warrantless entry and search by law enforcement officers does not violate the Fourth Amendment's proscription of 'unreasonable searches and seizures' if the officers have obtained the consent of a third party who possesses common authority over the premises." *Illinois v. Rodriguez*, 497 U.S. 177, 179 (1990) (citing *United States v. Matlock*, 415 U.S. 164 (1974)).

Professor LaFave's treatise on the Fourth Amendment observes:

"It has sometimes been contended that because, as held in *Rakas v. Illinois*, 439 U.S. 128, 99 S.Ct. 421, 58 L.Ed.2d 387 (1978), Fourth Amendment rights are personal and may not be asserted vicariously, this means the defendant may not question the voluntariness of a third party's consent. But this is not the case when that consent is being relied upon as a justification for intrusion into defendant's legitimate expectation of privacy."

Wayne R. LaFave, 4 Search & Seizure § 8.3 (5th ed.).

- 12 -

affirmed the principle that a defendant waives the ground of suppressibility as a basis for opposition to the Commonwealth's introduction of evidence when he or she fails to file a suppression motion pursuant to our rules of criminal procedure."). Clearly, a trial judge would abuse his or her discretion in *sua sponte* excluding, during trial, introduction of evidence that the judge thinks was unlawfully obtained. That discretion is equally abused when the judge applies a theory that was not raised. If Appellee wished to litigate the issue discussed by the trial court, he was required to raise that particular ground.[8] *Id*.

Having concluded that the trial court erred in suppressing the physical evidence on the basis of a theory not raised by Appellee, we now address whether the order may nevertheless be affirmed. Appellee correctly notes that we may do so for any reason supported by the record, and argues that, notwithstanding the trial court's rationale, his suppression motion properly challenged the recovery of the firearm as a violation of **Miranda**. Appellee maintains that his motion properly sought suppression of the statements and

---

[8] That requirement is linked to the Commonwealth's evidentiary burden. **See Commonwealth v. Dixon**, 997 A.2d 368, 375 (Pa.Super. 2010) (*en banc*) ("[Dixon] did not assert as a ground for suppression that the manner of the seizure of the physical evidence violated Dixon's constitutional rights, only that the seizure was not warranted in the first place."). Presently, there is no evidence in the record to support or dispel the notion that any consent was involuntary, which is unsurprising given the fact that Appellee did not raise the issue.

the firearm due to violations of *Miranda*, and that the order may be affirmed on that ground.

> [Appellee] filed a pretrial motion challenging the admission of evidence of the firearm seized by the Trooper as unconstitutional. [Appellee] sought to have the Court declare [Appellee]'s arrest to be unlawful, to suppress evidence obtained as a result of the arrest, and to suppress statements made in violation of the rights secured by the Fourth, Fifth, and Fourteenth Amendment to the United States Constitution and Article I, Section 8 and 9 of the Pennsyl[v]ania Constitution, in particular unlawful search and seizure and violation of his right to counsel, fair trial and freedom from self-incrimination. . . . In addition, [Appellee] argued that what began as a consensual encounter between [Appellee] and the police in answer to their inquiry, became an unlawful arrest, an arrest and taking into custody as a prisoner without probable cause, and followed by continuing questioning without the *Miranda* advisements that led the police to obtain involuntarily from [Appellee] the location of a pistol.

Appellee's brief at 22. Accordingly, Appellee advances the theory that the evidence should have been suppressed based on the lack of *Miranda* warnings, which "led the police to obtain involuntarily" the firearm's location.

We cannot affirm on this basis. Appellee avers that the fruit of the poisonous tree doctrine warrants suppression of the gun due to the lack of *Miranda* warnings. In other words, but for the improper questioning, he would not have revealed the location of the gun, which, in turn, led to the consensual search. While the trial court focused on the last part of this chain, Appellee asks us to consider an earlier link: his responses to the officers' questions, which the trial court suppressed.

We agree that the trial court's legal conclusions with respect to suppression of the statements must stand, as the Commonwealth does not challenge that portion of the order on appeal. However, Appellee fails to recognize that the fruit of the poisonous tree doctrine does not extend to physical evidence recovered due to *Miranda* violations. Hence, we may only affirm the portion of the suppression order suppressing Appellee's statements.

In *United States v. Patane*, 542 U.S. 630 (2004) (plurality), three Justices concluded that a voluntary statement, although unwarned, does not justify excluding physical evidence recovered as a result of that statement under the fruit of the poisonous tree doctrine. Therein, a police officer arrested Patane for violating a restraining order. The officer had information that Patane owned an illegal firearm. In contravention of *Miranda*, the officer repeatedly asked where the gun was located. Patane eventually stated that the gun was in his bedroom, leading to its recovery. Patane sought to suppress the physical evidence as an illegal derivative fruit of the tainted statement. The plurality concluded that result was not warranted.

> [T]he *Miranda* rule is a prophylactic employed to protect against violations of the Self–Incrimination Clause. The Self–Incrimination Clause, however, is not implicated by the admission into evidence of the physical fruit of a voluntary statement. Accordingly, there is no justification for extending the *Miranda* rule to this context. And just as the Self–Incrimination Clause primarily focuses on the criminal trial, so too does the *Miranda* rule. The *Miranda* rule is not a code of police conduct, and police do not violate the Constitution (or even the *Miranda*

rule, for that matter) by mere failures to warn. For this reason, the exclusionary rule . . . does not apply.

*Id*. at 636–37.  Justice Kennedy, joined by Justice O'Connor, concurred, but declined to go so far as the plurality, opining:

> In light of the important probative value of reliable physical evidence, it is doubtful that exclusion can be justified by a deterrence rationale sensitive to both law enforcement interests and a suspect's rights during an in-custody interrogation. Unlike the plurality, however, I find it unnecessary to decide whether the detective's failure to give Patane the full *Miranda* warnings should be characterized as a violation of the *Miranda* rule itself, or whether there is "[any]thing to deter" so long as the unwarned statements are not later introduced at trial.

*Id*. at 645 (Kennedy, J., concurring) (citation omitted).  It has been recognized that "the *Patane* plurality and concurrence agreed, at least, that *Miranda* does not require the exclusion of physical evidence that is discovered on the basis of a voluntary, although unwarned, statement. As several of our sister circuits have recognized, this narrow agreement is the holding of *Patane*." *United States v. Jackson*, 506 F.3d 1358, 1361 (11th Cir. 2007) (citations omitted); *Commonwealth v. Abbas*, 862 A.2d 606, 610 n.3 (Pa.Super. 2004) ("Though a plurality decision, the majority of the Justices agreed that introduction of nontestimonial derivative evidence does not implicate the Self–Incrimination Clause of the Fifth Amendment.").  In *Abbas*, we adopted the *Patane* approach.

> Currently, there is no precedent in this Commonwealth indicating that the Pennsylvania Constitution extends greater protection than its federal counterpart with respect to the Fifth Amendment right against self-incrimination in the context of physical evidence obtained as a result of or during the course of an

unwarned statement. We find **Patane** instructive here. Accordingly, until our Supreme Court has the occasion to conduct an independent analysis, we are persuaded by the reasoning in **Patane**.

**Id**. at 609–10 (footnotes omitted).

Pursuant to these principles, the trial court could not have suppressed the firearm based on the **Miranda** violations, which was the only ground raised by Appellee. We therefore cannot affirm on that alternative basis. Accordingly, we affirm the portion of the order granting suppression of Appellee's statements, and reverse with respect to the firearm.

Order reversed. Jurisdiction relinquished.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary


Date:  7/17/2018