J-S30037-25

2026 PA Super 6

| | | |
|---|---|---|
| PHILIP IMBRENDA AND DONNA IMBRENDA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| | : | |
| DOROTHY S. IMBRENDA | : | |
| | : | No. 485 EDA 2025 |
| Appellant | : | |

Appeal from the Judgment Entered January 17, 2025
In the Court of Common Pleas of Philadelphia County Civil Division at
No(s): 220200739


BEFORE: OLSON, J., MURRAY, J., and FORD ELLIOTT, P.J.E.[*]

OPINION BY OLSON, J.: **FILED JANUARY 12, 2026**

Dorothy S. Imbrenda, Appellant, appeals from the judgment entered in the Court of Common Pleas of Philadelphia County, which quieted title in favor of Philip Imbrenda ("Appellee Philip") and Donna Imbrenda ("Appellee Donna") (collectively, "Appellees") as to one-half divided interest in the real property located at 2802 Kensington Avenue, Philadelphia, Pennsylvania (the "Property"). After careful review, we affirm.

The trial court summarized the facts and procedural history of this case as follows:

> On February 7, 2022, this [quiet title action] commenced when Appellees filed a complaint against Appellant for [the] Property. The complaint alleged that on or about March 2, 1978, a deed that listed Vincent [Imbrenda], Dorothy [Imbrenda], [Appellee] Philip, [Appellee] Donna and Patricia Imbrenda, respectively, as grantors, was fraudulently signed and recorded in the Philadelphia

_____

[*] Retired Senior Judge assigned to the Superior Court.

Recorder of Deeds office at Deed Book 2078 Page 179. [The 1978 deed purportedly transferred ownership of the Property from Vincent Imbrenda, Dorothy Imbrenda, his wife, and Appellee Philip and Appellee Donna, his wife, and Patricia Imbrenda, Appellee Philip's ex-wife (as grantors) to Vincent Imbrenda and Dorothy Imbrenda, his wife, (as grantees) as tenants by the entireties.] On March 11, 2022, Appellant filed an answer to the complaint, alleging that the signatures on the 1978 deed were not forgeries. Appellant further alleged that the Appellees, in the presence of a licensed Public Notary, Domenic Repice, appeared before Domenic to acknowledge their signing of the 1978 deed ("1978 deed"). Appellant further asserted that Appellees were not lawful owners of the Property and that such [*sic*] Appellant had no responsibility to provide Appellees with any accounting of net profits received on the Property. Appellant also made a counterclaim asserting as a new matter their full vestment in the property as a matter of law, pursuant to a subsequent May 28, 2004 deed ("2004 deed") [which purportedly transferred the Property from Vincent Imbrenda (as grantor) to Vincent Imbrenda and Appellant as grantees], as well as assertively denying any claims of real estate fraud and raising the affirmative defenses of statutes of limitations and doctrine of laches. …

* * *

On September 25, 2024, a bench trial was held. … Appellee Philip testified that he owned a business, Phil's Appliance Repair, next door to the Property. He was offered to rent the Property in 1968, and two years later, to buy it, which he accepted, adding his parents, Vincent and Dorothy Imbrenda, to the deed in 1970 due to his age and lack of credit history. [Appellee Philip's then-wife, Patricia Imbrenda, was also added to the 1970 deed.] Until approximately 1975, Appellee Philip remained involved in running the business. He later got into politics and started to distance himself from the business operations, due to disagreements he had with his father about what he was doing on the business premises. Appellee Philip also testified that at no time after purchasing the Property, with his mother and his father, did his father ever ask him to sign a deed transferring the title of the Property. He was then presented with the 1978 [d]eed, allegedly displaying his signature. He testified that he never signed a deed after the 1970 [d]eed, never saw a lawyer in that regard, and never authorized anyone to sign a deed on his behalf. Additionally, Appellee Philip testified that he found out that his

sister, Appellant, was attempting to sell the building in February of 2022, after which he consulted counsel. Appellee Philip testified that when he divorced his then[-]wife, Patricia Imbrenda, the Property was not at issue in the divorce proceedings. On cross-examination, counsel for Appellant asserted that he had no questions for the witness in view of the "dead man's rule".

Next, Appellee Donna was called to testify. Appellee Donna testified that she married Appellee Philip in 1976. She was then presented with the 1978 [d]eed, allegedly displaying her signature, to which Appellee Donna testified that she had never seen the 1978 [d]eed prior to this suit being filed, and she never signed the 1978 [d]eed. She further testified that she never gave anyone authority to sign the 1978 [d]eed on her behalf, and therefore the Property was never in her name. On cross-examination, counsel for Appellant again asserted that he had no questions for the witness in view of the "dead man's rule".

Finally witness Vincent "Jimmy" Imbrenda ("Jimmy"), brother to both Appellant and Appellee Philip, was called to testify. On direct examination, Jimmy testified that he worked at the appliance repair store for "50-something" years, and he was responsible for taking care of the store. Jimmy also stated that he called his brother, Appellee Philip, after finding out Appellant was trying to sell the store in February of 2022. Furthermore, Jimmy testified to an *incident* occurring in the late 80's, during which he was in the store with his father, Vincent Imbrenda, and his father asked him if he knew how to sign his brother's name (Appellee Philip). Jimmy further testified that he inquired what his dad needed it for, to which his father said, "Never mind", and went back to the corner with his father's "accountant friend". Jimmy noted that he did not know what his father and the accountant friend were doing, but after the accountant left, Jimmy opened a piece of paper taken out of the trash and saw [Vincent] was practicing writing Appellee Philip's signature.

On cross-examination, Jimmy was questioned about Appellee Philip's divorce from Patricia Imbrenda, and testified that Patricia was given a house to get her away from the business, which satisfied Patricia. Jimmy further testified that he could not confirm the validity of any signatures of the 1978 deed, since both his father and brother had bad handwriting. He did find it important to mention that he had seen his dad practicing Appellee Philip's signature without knowing why, and note that his father never

participated in anything "on board".  Jimmy further asserted that he had no knowledge of the 2004 deed or the 1978 deed until 2022 because, "I mean, he's our father.  Why would he try to steal something from his kid?"  After additional questioning, Appellees then rested and moved their exhibits into evidence.

Next, Appellant's counsel called the Appellant to testify.  Appellant testified that her dad [Vincent] bought a house for Patricia Imbrenda (and the two sons she had with Appellee Philip) to get her name off the business and he agreed to sign off on it.  When shown the 2004 deed, [Appellant] identified the document as the deed to the shop; the one which her dad put in both their names.  When asked if she had any familiarity with the 1970 and 1978 deeds before they were recorded, she responded, "Well, I knew that he talked to him about signing off because he bought the house for like $9,000 dollars.  He bought a house for [Patricia] and the two little ones… and she took you know, she took that.  She didn't stay there long, but she was there for a while and then she sold it, and she moved on [to another home Vincent bought for Patricia] . . .".  After additional questioning, Appellant rested and had no new exhibits to move into evidence.

Trial Court Opinion, 4/14/25, at 1-6 (emphasis in original, citations to record omitted).[1]

_____

[1] During the bench trial, counsel for Appellees advised the trial court that the parties stipulated to the admissibility of certain exhibits, specifically the three deeds at issue, *i.e.*, the 1970 deed, the 1978 deed and the 2004 deed. N.T, 9/25/24, at 3-4.  The trial court admitted the three deeds into evidence.  ***Id.*** at 30-31.  However, Appellant failed to include the exhibits in the certified record.  It is well settled that "it is an appellant's duty to ensure that the certified record is complete for purposes of review."  ***Commonwealth v. Lopez***, 57 A.3d 74, 82 (Pa. Super. 2012) (citation and brackets omitted).  Moreover, Appellant failed to include copies of the trial exhibits in the reproduced record.  We note, however, that copies of the three deeds are attached to Appellees' Complaint.  ***See*** Complaint, 2/7/22, at Exhibit B (1970 deed), Exhibit C (1978 deed) and Exhibit D (2004 deed).  The trial court's factual descriptions of these documents are accurate and have not been disputed by Appellant; therefore, our review of this case has not been
*(Footnote Continued Next Page)*

Following the bench trial, the trial court entered an order finding in favor of Appellees and against Appellant. Order, 10/15/24 at 1.[2] The trial court found that the 1978 and 2004 deeds were void and directed the Recorder of Deeds of Philadelphia County to accept a deed which transfers the Property from Appellant to Appellant and Appellee Philip as tenants in common. *Id.* at 1-2. Following the denial of Appellant's motion for post-trial relief, Appellant filed a notice of appeal and, as previously indicated, filed her 1925(b) concise statement. The trial court entered its 1925(a) opinion on April 14, 2025.

Appellant raises the following issues in her appeal:

Did the [t]rial court abuse its discretion by finding that a deed recorded in 1979, unchallenged for 43 years, and then only after the grantees were deceased when:

(a) The only testimony supporting the claim that [Appellee Philip] did not sign the deed was from [Appellees].

(b) No corroborating documents were offered by [Appellee] to establish[] that [Appellee Philp] believed [he] owned the property from 1979 to 2022.

(c) No evidence relating to [Appellee Philip's] divorce from his former wife was offered by [Appellees].

_____

impeded. However, we caution Appellant's counsel to comply with the obligation to make sure that the certified record is complete.

[2] Although the trial court's order was dated October 10, 2024, notice of this order pursuant to Pa.R.C.P. 236 was not given until October 15, 2024. *See* Pa.R.C.P. 236(b) (requiring that the prothonotary note in the docket the giving of written notice of the entry of an order); Pa.R.A.P. 108(b) (stating that the date of entry of a civil order "shall be the date on which the clerk makes the notation in the docket that written notice of entry of the order has been given as required by [Rule] 236(b)").

(d) The testimony of [Appellees] concerning events before the deaths of the grantees in the 1978 deed was incompetent under the Dead Man's Act[,] 42 Pa.C.S.A. § 5930.

Appellant's Brief at iii.[3]

Before we consider the merits of the issues raised by Appellant, we must determine whether Appellant has preserved the issues for our review. Specifically, we must determine whether Appellant waived all issues on appeal by failing to adhere strictly to the specific requirements under Pa.R.A.P. 1925(b) with respect to her concise statement of matters complained of on appeal.

On February 28, 2025, the trial court issued an order directing Appellant to file a 1925(b) statement. Specifically, the order stated:

[] Appellant is hereby directed to provide th[e trial court] with a [s]tatement of [m]atters [c]omplained of on [a]ppeal, no later than twenty-one (21) days from [the] date hereof, pursuant to [Rule] 1925(b). The statement shall be filed of record pursuant to Pa.R.A.P. 121(a). The [s]tatement shall be served via first-class mail, addressed to 1301 Filbert Street, Room 1205, Philadelphia, PA 19107. Failure to comply with such direction **may** be considered by the Appellate Court as a waiver of all objections to the [o]rder, ruling or other matter complained of.

1925(b) Order, 2/28/25 (emphasis added). Appellant timely filed her Rule 1925(b) statement on March 20, 2025. Nevertheless, on March 26, 2025, the

_____

[3] Although the trial court found that both the 1978 and the 2004 deeds were void, Appellant's brief only argues that the trial court erred in finding the 1978 deed was void. Accordingly, any issue regarding the validity of the 2004 deed has been waived.

- 6 -

trial court received untimely mail service of that same statement. **See** Trial Court Opinion, 4/14/25, at 7.

In its Rule 1925(a) opinion, the trial court suggests that Appellant waived all issues on appeal by failing to serve her Rule 1925(b) statement on the trial court within 21 days of the court's order as mandated by the Pennsylvania Rules of Appellate Procedure. **See** Pa.R.A.P. 1925(b)(1) ("The appellant shall file of record the [s]tatement and concurrently serve the judge."); Pa.R.A.P. 1925(b)(2)(i) ("The judge shall allow the appellant at least 21 days from the date of the order's entry on the docket for the filing and service of the [s]tatement.") **See also** Trial Court Opinion, 4/14/25, at 7. The trial court maintains that since it did not receive the statement until two days after the March 24, 2025 deadline, service was untimely pursuant to Rule 1925(b)(1). **Id**. Further, the trial court notes that Appellant failed to obtain any United States Postal Service forms or certificates to evidence timely mailing, as required by Rule 1925(b)(1). **Id.**

In **Keystone Specialty Serv. Co. v. Ebaugh**, 267 A.3d 1250, 1254 (Pa. Super. 2021), this Court made it clear that "[w]here the trial judge has issued a Rule 1925(b) order, the appellant's failure to file and serve on the trial judge a statement of errors complained of on appeal automatically waives all issues on appeal." (citation omitted). **See also Forest Highlands Commun. Ass'n v. Hammer**, 879 A.2d 223 (Pa. Super. 2005) (holding that an appellant's failure to serve the trial judge with a Rule 1925(b) statement

resulted in waiver). In general, appellants must timely comply with a trial court's orders. *See Commonwealth v. Lord*, 719 A.2d 306, 309 (Pa. 1998.) Our courts have consistently held that failure to comply with the mandatory requirements of Rule 1925(b) results in the automatic waiver of all issues. *See Greater Erie Indus. Dev. Corp. v. Presque Isle Downs, Inc.*, 88 A.3d 222, 224 (Pa. Super. 2014) (*en banc*), *quoting* *Commonwealth v. Schofield*, 888 A.2d 771, 744 (Pa. 2005). Because Appellant did not timely serve the trial court with her Rule 1925(b) statement, we could find that all issues were waived. However, this Court has declined to find waiver when a trial court fails to comply strictly with the requirements of Rule 1925(b)(3) (Contents of order).

Rule 1925(b)(3) provides:

(3) *Contents of order.* The judge's order directing the filing and service of a Statement **shall specify**:

(i) the number of days after the date of entry of the judge's order within which the appellant must file and serve the Statement;

(ii) that the Statement be filed of record;

(iii) that the Statement shall be served on the judge pursuant to paragraph (b)(1) and both the place the appellant can serve the Statement in person and the address to which the appellant can mail the Statement. In addition, the judge may provide an email, facsimile, other alternative means for the appellant to serve the judge; and

(iv) that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) **shall** be deemed waived.
That the

- 8 -

Pa.R.A.P. 1925(b)(3) (emphasis added). The note to Rule 1925 further clarifies that "subparagraph [(b)(3)] specifies what the judge **must** advise appellants when ordering a Statement". Pa.R.A.P. 1925, Note (emphasis added).

Contrary to the express requirement of Rule 1925(b)(3)(iv), the trial court's order failed to advise Appellant that any issues not contained in the concise statement **shall** be deemed waived. Under controlling case law, the failure to include this language protects Appellant from a finding of waiver.

In **Commonwealth v. Jones**, 193 A.3d 957 (Pa. Super. 2018), the appellee argued that this Court must quash the appeal filed by the Commonwealth due to the Commonwealth's failure to comply with Rule 1925(b) by not serving the trial judge with a copy of its concise statement. This Court declined to quash the appeal. Specifically, this Court found that the trial court's 1925(b) order failed to comply with Rule 1925(b)(3) by, *inter alia*, informing "the Commonwealth that failure to comply [with Rule 1925(b)] 'may be considered' waiver". **Id.** at 962. The **Jones** Court noted that "[the language in the trial court's 1925(b) order] differs to a material degree from the 'shall be deemed waived' test of Rule 1925(b)(3)(iv)." **Id.** (footnote omitted). Hence, the Court concluded "[w]e decline to find waiver due to the Commonwealth's potential noncompliance [with Rule 1925(b)], because the trial court's Rule 1925(b) order itself is deficient." **Id.** at 961.

- 9 -

In **Commonwealth v. Bush**, 197 A.3d 285 (Pa. Super. 2018), the lower court opined that the appellant waived all claims on appeal by failing to file a concise statement. This Court disagreed. This Court found that the 1925(b) order issued by the lower court was defective as it failed to specify that the concise statement had to be both filed with the court and served on the judge. **Id.** at 287. "More importantly, [the lower court's order] does not advise [a]ppellant that failure to comply would result in waiver." **Id.** Hence, the **Bush** Court concluded that "[t]he deficiencies in the [lower] court's order preclude a finding of waiver." **Id.** **See also Commonwealth v. Daniels**, No. 451 WDA 2023 (Pa. Super. filed Feb. 9, 2024) (unpublished memorandum)[4] (appellant's stated question was not included in his 1925(b) statement, however the issue is not waived as the trial court's 1925(b) order incorrectly stated that failure to comply with the order "may" result in waiver rather than "shall" result in waiver); **Commonwealth v. Gibson**, No. 631 EDA 2020 (Pa. Super. filed January 25, 2021) (citing to **Jones, supra** and **Bush, supra**, "this [C]ourt has declined to find waiver if the trial court does not expressly inform the appellant that any issue not properly included in the Statement timely filed and served pursuant to subdivision (b) shall be deemed waived"). **But see Commonwealth v. Medina**, 209 A.3d 992, 997 (Pa.

_____

[4] **See** Pa.R.A.P. 126(b) (stating that unpublished, non-precedential memorandum decisions of the Superior Court filed after May 1, 2019 may be cited for their persuasive value).

Super. 2019) (issues waived since the trial court's order advised appellant that "failure to comply with such direction may be considered by the appellate court as a waiver of all objections to the [o]rder, ruling or other matter complained of").

Pursuant to *Jones, supra* and *Bush, supra* (both of which preceded *Medina*), we conclude that Appellant did not waive her issues on appeal as the trial court's 1925(b) order failed to comply with Rule 1925(b)(3) and, therefore, was defective.[5]  Accordingly, the merits of the case must be reviewed.  Thus, we turn to the issues raised by Appellant on appeal.[6]

Appellant argues that the trial court abused its discretion in concluding that the evidence was sufficient to find that the 1978 deed was a forgery and, therefore, void.  Specifically, Appellant asserts that Appellee Philip's testimony lacked credibility as he testified that 1) he only found out about the 1978 deed in 2022 even though it was recorded in 1979; 2) the 1978 deed contained the signature of Appellee Philip's former wife, Patricia, yet Appellee Philip claimed

_____

[5] To the extent that the trial court uses a standard or form Rule 1925(b) order, we respectfully suggest that the court revise the order to comply strictly with Rule 1925(b)(3).

[6] The trial court asserted in its Rule 1925(a) opinion that the appeal should be quashed for failure to comply with the service requirement of Rule 1925(b) (Trial Court Opinion, 4/14/25), at 7); however, the trial court went on to address the merits of the issues raised by Appellant.  We note that, if issues are waived on appeal because an appellant failed to preserve them in the trial court, the appropriate action is to affirm rather than quash the appeal; quashing is appropriate when we lack jurisdiction.  *See In re K.L.S.*, 934 A.2d 1244, 1246 n.3 (Pa. 2007).

- 11 -

not to know if she signed the deed; 3) Appellee Philip and his former wife divorced in 1976 yet Appellee Philip claimed the Property did not come up in the divorce; 4) Appellee Philip offered no documentary evidence supporting his claim that from 1979 until 2022 he believe that he was the owner of the Property; and 5) Appellees' testimony was incompetent under the Dead Man's Act. Appellant's Brief at 5-6.

A quiet title action may be brought, in relevant part "to determine any right, lien, title or interest in the land or determine the validity or discharge of any document, obligation or deed affecting any right, lien, title or interest in land", or "compel an adverse party to file, record, cancel, surrender or satisfy of record, or admit the validity, invalidity or discharge of, any document, obligation or deed affecting any right, lien, title or interest in land". Pa.R.C.P. 1061 (b)(2) and (3). In this case, Appellees' quiet title action is based upon the assertion that the 1978 deed was forged and, therefore, invalid. In entering judgment for Appellees, the trial court agreed.

Our Court recently set forth our standard of reviewing a judgment entered in a quiet title action. In **Durante v. Polanco**, 339 A.3d 451 (Pa. Super. 2025) (unpublished memorandum), this Court stated:

> In reviewing a judgment entered in a quiet title action, this Court is limited to determining "whether the findings of fact are supported by competent evidence, whether an error of law has been committed, and whether there has been a manifest abuse of discretion." **Regions Mortg., Inc. v. Muthler**, 889 A.2d 39, 41 (Pa. 2005) (citation and quotation marks omitted). This Court "will not reverse a determination of the trial court in a quiet title action absent an error of law or capricious disregard of the evidence."

***Birdsboro Mun. Authority v. Reading Co. and Wilmington & Northern R.R***., 758 A.2d 222, 225 (Pa. Super. 2000) (citations and quotation marks omitted).

A forged or fraudulent "instrument is not binding on any person and is wholly inoperative to transfer any title or right to property whether the holder is an innocent or guilty purchaser." ***Harris v. Harris***, 239 A.2d 783, 784 (Pa. 1968). ***See also Stanko v. Males***, 135 A.2d 392, 395 (Pa. 1957) (affirming order that set aside a deed that was forged by owner's wife); ***Reck v. Clapp***, 98 Pa. 581, 585 (Pa. 1881) (reiterating that a forged deed cannot pass title of a property).

"[W]hen the issue of a forgery is raised, the party claiming forgery has the burden of proving the existence of a forgery by clear and convincing evidence." ***De Lage Landen Servs., Inc. v. Urban Partnership, LLC***, 903 A.2d 586, 590 (Pa. Super. 2006) (citation omitted). "The standard of clear and convincing evidence is defined as testimony that is so 'clear, direct, weighty and convincing as to enable the trier of fact to come to a clear conviction, without hesitance, of the truth of the precise facts in issue.'" ***In re R.N.J.***, 985 A.2d 273, 276 (Pa. Super. 2009) (citation omitted). "[F]orgery presents an issue of fact, [thus,] the resolution of the issue necessarily turns on the court's assessment of the witness['] credibility." ***De Lage Landen Servs., Inc***., 903 A.2d at 590 (citation omitted).

To the extent that this Court must consider the weight the trial court gave to the evidence when determining the credibility of witnesses, we are mindful of the following:

> our scope of review on a weight of the evidence claim is very limited. We will respect the trial court's findings with regard to credibility and weight of the evidence unless it can be shown that the lower court's determination was manifestly erroneous, arbitrary and capricious or flagrantly contrary to the evidence.

***Rissi v. Cappella***, 918 A.2d 131, 140 (Pa. Super. 2007) (citation omitted).

***Id.*** at *3-*4.

- 13 -

"Clear and convincing evidence is the highest burden in our civil law and requires that the fact-finder be able to come to clear conviction, without hesitancy, of the truth of the precise fact in issue." **Spaw v. Springer**, 715 A.2d 1188, 1189 (Pa. Super. 1998) (quotation marks and citation omitted); **see also V–Tech Servs., Inc. v. Street**, 72 A.3d 270, 276 (Pa. Super. 2013).

In concluding that the evidence was sufficient to find that the 1978 deed was forged, the trial court stated:

> Appellees brought this claim to compel Appellant to admit the invalidity or discharge of a fraudulent deed that circumvented Appellee Philip[']s interest in the Property. The document at issue is the 1978 [d]eed. The trial court took note of several issues and discrepancies regarding the 1978 [d]eed.
>
> First, the 1978 deed listed Appellee Donna [Appellee Philip's second wife], when Donna never had any legitimate interest in the Property. When the 1970 deed was executed, Appellee Philip was married to Patricia Imbrenda. Testimony revealed that Appellee Donna married Appellee Philip in 1976, two years prior to the 1978 deed being recorded.[7]   Furthermore, Appellant and Jimmy testified that when Appellee Philip and Patricia Imbrenda divorced, Vincent [] bought her a house to get her away from the Property. Because Patricia Imbrenda was never presented as a witness for either side, there was also a genuine question whether her signature on the 1978 deed was legitimate, adding to the inconsistencies of the 1978 deed.

_____

[7] The fact that Appellee Philip and Appellee Donna married in 1976, two years before the 1978 deed was allegedly executed, is irrelevant to the issue of whether the 1978 deed is authentic.  What is relevant is whether the 1978 deed's validity is questionable because Appellee Donna was not a party to the 1970 deed and, therefore, never had any ownership interest in the Property at the time the 1978 deed identified her as a grantor.

- 14 -

Secondly, there was no evidence presented confirming the validity of the notary credentials on the 1978 deed. Domenic Repice, the notary who signed the 1978 deed alleging that all parties appeared before him, was not found in the Pennsylvania notary database as ever having been a notary in Pennsylvania. This was mentioned in the pleadings and never explored any further at trial. Testimony by Appellees asserted that neither Appellee Philip nor Appellee Donna signed or authorized signatures on their behalf.

Finally, the trial court evaluated the 1978 [d]eed in question. In addition to the questionable notarization, the trial court also noted other discrepancies in the 1978 [d]eed such as: the first page reflecting the deed was made March 02, 1978, yet the last page showing it signed March 02, 1979; and the presence of Appellee Donna's name when she had no legal interest or claim in the Property. These discrepancies coupled with the testimony heard at trial led the trial court to find that the 1978 [d]eed in question was forged, thus making the quiet title claim valid.

* * *

Here, the trial court considered all pleadings, facts, evidence, and testimony at trial and ultimately found the Appellees['] claims and testimony to be more credible than that of the Appellant. After hearing Appellee Philip explain how the Property came about, the dynamic of the familial connections, that he never signed or authorized his signature on the 1978 [d]eed, and when he found out that Appellant was attempting to sell the Property[,] the trial court found Appellee Philip to be honest and truthful. Then, the trial court heard Appellee Donna's testimony explaining when her [*sic*] and Appellee Philp got married and asserting that she never signed or authorized her signature on the 1978 [d]eed[,] the trial court found Appellee Donna to be honest and truthful. Next, the trial court heard Jimmy's testimony explaining when he learned that his sister, [Appellant], was trying to sell the Property, when he believed Appellees got married, and the story regarding his father practicing writing Appellee Philip's signature and attempting to get Jimmy to do the signing[,] because Jimmy had no interest to gain from the Property at issue, the trial court found Jimmy's testimony credible. Finally, the trial court heard testimony from Appellant explaining Appellee Philip's divorce from Patricia Imbrenda, the family dynamics and business operation of the Property, and the 2004 deed.

- 15 -

Although the trial court found pieces of Appellant's testimony to be credible and truthful, such as her explaining how Patricia's interest got absolved in the Property and the closing of the business, there were parts of Appellant's testimony that the trial court found to be deceptive and untruthful, such as the circumstances surrounding changing the deed to the Property and some of the intricacies of the family dynamic and how it related to the Property in question. The trial court determined that Appellant could not speak to the validity of the 1978 deed. Additionally, the trial court found that Appellant had not provided any compelling testimony or evidence to refute the forgery claims of the Appellees.

Trial Court Opinion, 4/14/25, at 12-13, 14-15 (citations to record omitted). Although the evidence is thin, based upon our standard of review, we conclude that the evidence presented was sufficient to find that the 1978 deed was forged. Whether a signature has been forged is an issue of fact whose resolution rests on the court's assessment of the witnesses' credibility. Even if a document has been notarized, a finder of fact may conclude that, based upon credible testimony, a signature was forged. *See In re Estate of Cruciani*, 986 A.2d 853 (Pa. Super. 2009) (affirming a finding that the signature on a notarized will was forged).

It has long been the law of this Commonwealth that the mere fact that a document has been notarized does not establish irrefutable proof that the document is genuine. As was held by this Court almost 90 years ago,

It is true that a line of authorities hold that a certificate of a notary public or justice of the peace is prima facie evidence of the facts therein set forth. However, if the signature . . . to the questioned document was a forgery, the acknowledgment was as false and fraudulent as the instrument itself. When the commonwealth proved that the signature of Hendricks to the questioned document was a forgery, nothing more was required to overcome

- 16 -

the prima facie evidence of its execution and acknowledgment. The commonwealth was not obliged to question the signature of the justice of the peace or his legal authority to take an acknowledgment. The certificate of the justice of the peace, and all that it implied, could not overcome conclusive proof that the document itself was a forgery.

***Com. v. Snyder***, 187 A. 254, 259–60 (Pa. Super. 1936) (cleaned up, citations omitted). Here, the trial court, sitting as the finder in fact, considered Appellees' testimony that the signatures on the 1978 deed were not theirs and that they did not authorize anyone to sign the deed on their behalf, and the trial court found them to be credible. Contrary to Appellant's assertion, nothing in Pennsylvania law requires corroborating evidence, including documentation, to support the contention that a signature is forged. Moreover, the court found that the discrepancies in the 1978 deed further supported the finding that the deed was not valid. We cannot conclude that these determinations were manifestly erroneous or arbitrary and capricious, or contrary to the evidence. Hence, we must accept the trial court's finding that the Appellees' signatures were forged on the 1978 deed rendering the deed invalid.[8]

_____

[8] We take issue, however, with the trial court placing the burden on Appellant, as the defendant in this quiet title action, to prove that the alleged notary of the 1978 deed, Domenic Repice, had proper notary credentials. As noted above, the trial court stated in its 1925(a) opinion,

  [T]here was no evidence presented confirming the validity of the notary credentials on the 1978 deed. Domenic Repice, the notary who signed the 1978 deed alleging that all parties appeared before

*(Footnote Continued Next Page)*

J-S30037-25

Finally, Appellant argues that the Appellees are not competent to offer testimony in light of the Dead Man's Act, which provides in relevant part:

> [I]in any civil action or proceeding, where any party to a thing or contract in action is dead, . . . and his right thereto or therein has passed, either by his own act or by the act of the law, to a party on the record who represents his interest in the subject in controversy, neither any surviving or remaining party to such thing or contract, nor any other person whose interest shall be adverse to the said right of such deceased . . . party, shall be a competent witness to any matter occurring before the death of

---

> him, was not found in the Pennsylvania notary database as ever having been a notary in Pennsylvania.

Trial Court Opinion, 4/14/25, at 13. The trial court makes the "finding" that Mr. Repice was not found in the notary database, even though the court goes on to state "[t]his was mentioned in the pleadings and never explored any further at trial". *Id.* A review of the certified record reveals that, in December 2022, the Appellees filed a response to Appellant's motion for judgment on the pleadings in which they asserted,

> The alleged notary that allegedly notarized the signatures of [Appellees] Philip and Donna, Domenic Repice, is not in the Pennsylvania notary data base **so it is possible** Domenic Repice was not even a licensed notary in Pennsylvania in 1978 or ever. *See* Exhibit "B". **This issue will need to be developed further at trial.**"

Plaintiffs' Response to Defendant's Motion for Judgment on the Pleadings, 12/13/22, at 4 (emphasis added). Exhibit B to Plaintiffs' Response to Defendant's Motion for Judgment on the Pleadings appears to be a screen shot of an online search done on December 8, 2022 at www.notaries.pa.gov/pages/NotarySearch. It appears that a search of the name "Domenic Repice" was done, yet it is not clear from the document what the result of the search was. Although Appellees' response to the Motion for Judgment on the Pleadings indicated that the issue regarding Mr. Repice's credentials needed to be developed at trial, a review of the trial transcript reveals that the issue was never addressed and no evidence regarding Mr. Repice's notary public credentials was ever introduced. Thus, the trial court erred in relying, in any way, upon this allegation.

- 18 -

said party. . ., unless the action or proceeding is by or against the surviving or remaining partners, joint promisors or joint promisees, of such deceased . . . party, and the matter occurred between such surviving or remaining partners, joint promisors or joint promisees and the other party on the record, or between such surviving or remaining partners, promisors or promisees and the person having an interest adverse to them, in which case any person may testify to such matters; . . . or, unless the issue or inquiry be devisavit vel non, or be any other issue or inquiry respecting the property of a deceased owner, and the controversy is between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses.

42 Pa. C.S.A. § 5930.[9]  Specifically, Appellant filed a motion *in limine* asking the trial court to prohibit Appellees from testifying to matters occurring before the death of Vincent Imbrenda.  Motion *in Limine*, 12/22/23.  On September 26, 2024, the trial court denied Appellant's motion.[10]

_____

[9] As our Supreme Court has stated:

[T]he Dead Man's Act provides an exception to the general rule of competency and disqualifies surviving parties to a transaction or event who have an interest adverse to the decedent from testifying as to matters which occurred prior to the decedent's death.  The purpose of the Act is to prevent the injustice which might flow from permitting the surviving party to a transaction with a decedent to give testimony thereon favorable to himself and adverse to the decedent, which the latter's representative would be in no position to refute.  The Act accomplishes this purpose and aids the estate by making the witness incompetent to testify to such matters.

**Estate of Caruso v. Caruso**, 322 A.3d 885, 889 n.5. (Pa. 2024) (internal citation and quotation omitted).

[10] Although the order denying the motion *in limine* is dated September 24, 2024, Pa.R.C.P. 236(b) notice was not given until September 26, 2024.

A motion *in limine* is used before trial to obtain a ruling on the admissibility of evidence. ***Northeast Fence & Iron Works, Inc. v. Murphy Quigley Co., Inc.,*** 933 A.2d 664 (Pa. Super. 2007). "It gives the trial judge the opportunity to weigh potentially prejudicial and harmful evidence before the trial occurs, thus preventing the evidence from ever reaching the jury." ***Parr v. Ford Motor Co*.,** 109 A.3d 682, 690 (Pa. Super. 2014), *appeal denied,* 123 A.3d 331 (2015). A trial court's decision to grant a motion *in limine* "is subject to an evidentiary abuse of discretion standard of review." ***Id****.*

Appellant argues that "upon the death of Vincent Imbrenda[,] his interest in the [P]roperty passed by virtue of the 2004 deed to [Appellant]. She therefore is the party 'on the record who represents his interest in the subject controversy.' ... Neither Philip Imbrenda nor his wife Donna are competent to offer evidence because their interests are plainly adverse to decedent and the representative of his interest by virtue of the 2004 deed – [Appellant]".  Appellant's Brief at 12.

As is well established,

For a witness to be disqualified as a witness under the Dead Man's Act, the following conditions must be proven:

(1) the deceased must have had an interest in the matter at issue, *i.e.*, an interest in the immediate result of the suit; (2) the interest of the witness must be adverse; and (3) a right of the deceased must have passed to a party of record who represents the deceased's interest.

*Davis v. Wright,* 156 A.3d 1261, 1267 (Pa. Super. 2017) *quoting **Pagnotti***

***v. Old Forge Bank***, 429 Pa. Super. 39, 631 A.2d 1045, 1046 (1993) (cleaned

up, brackets omitted).

> In rejecting Appellant's argument, the trial court held:
>
> [T]he deceased (Vincent) has no interest in the outcome of the case, as upon his death his estate had no interest in the [P]roperty and his interest was passed to Appellant. The decedent's estate is not represented in this case and Appellant has presented herself in her personal capacity and individual interest in the Property, not as the representative of the decedent's estate. … Appellee Philip[']s interest in the Property is only adverse to [] Appellant, not the decedent as he does not have any valid interest at the time of this claim. …
>
> Even if Appellant did satisfy all three requirements for the statute to be applicable, her issue still does not survive the exceptions given to the statute. This exception reads, "… or, unless the issue or inquiry be *devisavit vel non,* or be any other issue or inquiry respecting the property of a deceased owner, and the controversy is between parties respectively claiming such property by devolution on the death of such owner, in which case all persons shall be fully competent witnesses." When the decedent (Vincent) died in 2019, the Property at issue was not part of his estate. Inevitably, this case was not about an estate asset of the decedent.

Trial Court Opinion, 4/14/25 at 20-21 (internal citation omitted). Applying

the required standard of review, we find that the trial court did not abuse its

discretion in denying Appellant's motion *in limine* and permitting Appellees to

testify to events prior to Vincent Imbrenda's death. Specifically, Appellant

did not satisfy the three requirements necessary to invoke the Dead Man's

Act. Moreover, the exception to the Dead Man's Act is applicable in this case.

Here, the controversy is between parties claiming ownership interest in the

Property following the death of Vincent Imbrenda. Pursuant to the Act's exception, all persons claiming an interest in the Property are fully competent witnesses. Accordingly, the trial court did not err in permitting Appellees to testify to matters prior to Vincent Imbrenda's death.

In summary, Appellant's issues were not waived as the trial court failed to comply with Pa.R.A.P. 1925(b)(3)(iv) in issuing its order directing Appellant to file a concise statement of issues complained of on appeal. In reviewing the merits of Appellant's issues, we affirm the judgment of the trial court in favor of Appellees.

Judgment affirmed.

Judgment Entered.

Benjamin D. Kohler, Esq.
Prothonotary

Date: 1/12/2026